GEORGE McARTHUR, AS COMMITTEE OF THE PERSONAL ESTATE OF EBENEZER LARMOUTH, A PERSON OF UNSOUND MIND, RESPONDENT, _v._ HENRY GORDON, ROBERT DAVIS AND ELIZABETH DAVIS, HIS WIFE, APPELLANTS.

_What writing will make the person signing it a trustee of an express trust — Revised Statutes, part 2, chapter 7, title 1, section 7, as amended by chapter 322 of 1860 — a purchaser of the land described in the writing takes it impressed with the trust — the trustee cannot divest himself of the trust — the statute of limitations does not begin to run until the trust is repudiated — the trustee cannot, by any contract or agreement made with a purchaser, change the terms of the trust._

On the 16th day of October, 1874, Ellis McDouall conveyed her farm of forty-five acres to the defendant Gordon, who was her pastor, in consideration of one dollar and other valuable considerations. Mrs. McDouall, who was at that time old and feeble, then resided upon this farm with her adult son, Ebenezer Larmouth, who was feeble in intellect and dependent upon her for support, and she and her son continued to reside upon the same after the conveyance was made, and until her death, which occurred March 3, 1876. On April 19, 1876, the defendant Gordon executed, under seal, and acknowledged and caused to be recorded in the county clerk's office, an instrument by which he declared to all men, by these presents: "That, because of certain real estate duly conveyed to me by Ellis McDouall, I, * * * consider myself * * * bound to appropriate, or cause to be appropriated, for the comfortable support of Ebenezer Larmouth during his life, all the rents, after deducting necessary expenses of said real estate; or, if said real estate should be sold, the proper maintenance in board and clothing should be a first lien upon said real estate during the life of said Ebenezer Larmouth."

On January 22, 1877, the defendant Gordon conveyed the said real estate to the defendant Davis by a deed, expressed to be in consideration of $500, and the covenants and conditions therein contained, to the effect that the said defendant Davis should provide and furnish the said Ebenezer Larmouth, during his natural life, with suitable clothing, food and necessary lodging, medical attendance and medicine; that the support and maintenance of the said Larmouth should constitute and remain an indefeasible lien upon the premises thereby conveyed during his natural life.

Davis took possession of the premises and leased a dwelling-house and a part of the land to one Plunkitt, upon the agreement that Plunkitt should support Larmouth on the premises. Larmouth, having refused to accept the offer of Davis and Plunkitt, wandered away and was kept alive by the kindness of friends, nothing having been applied by either Davis or Gordon towards his support from the income of the farm.

In an action brought by the plaintiff, as committee of Ebenezer Larmouth, to compel the defendants to account for the amount of the rents and profits of the farm.

*Held,* that, by section 7 of title 1 of chapter 7 of part 2 of the Revised Statutes, as amended by chapter 322 of 1860, the writing subscribed by the defendant Gordon, placed upon the record after Mrs. McDouall's death, and the deed given by him to Davis in 1877, made Gordon the trustee of an express trust to receive the rents of the farm and apply them, less the necessary expenses, to the use of Ebenezer Larmouth during the life of the latter.

That the title of the farm was in Gordon, and that Larmouth had no authority or interest in the lands but was entitled to enforce the performance of the trust in equity.

That, as the declaration of the trust itself permitted a sale of the premises and was recorded, and the deed to Davis showed that he had actual notice of a trust, he took the premises impressed with the trust and subject to it.

Davis gave a mortgage upon the premises to Gordon for $400, to be paid in 1892, with annual interest in the meantime, which interest was to be used for such purpose as the said Gordon and one James Maxwell might mutually agree upon, the mortgage reciting the grant to be intended as security for the support and maintenance by Davis of Ebenezer Larmouth during his natural life. Davis paid the interest of twenty-four dollars per year to Gordon, none of which was paid to Larmouth.

*Held,* that as Gordon accepted the trust he could not divest himself of it without leave of the court, and was liable to the committee for the entire default, and that Davis was chargeable, as a co-wrong-doer with Gordon, to the extent that Davis retained what Larmouth should have received, less the twenty-four dollars per year which he paid to Gordon.

That the statute of limitations, which was interposed as a defense, had not begun to run with respect to the trust itself, which still remained in full force, as it had not been repudiated by the defendants.

*Lammer* v. *Stoddard* (103 N. Y., 672) followed.

That Larmouth had at least ten years, after any default, to enforce the equitable remedy conferred upon him by section 60 of the statute of uses and trusts.

The defendant Davis claimed that, by his contract with Gordon, he was only bound to furnish Larmouth with maintenance upon the premises itself, and that he was ready, and offered to do this, but that Larmouth refused to accept it, and that if Larmouth did not receive the support offered it was his own fault.

*Held,* that, inasmuch as the trust was impressed upon the farm, it was incompetent for Gordon to make any contract or agreement with Davis whereby the terms of the trust should be in any way diminished or its performance made to depend upon a new condition.

APPEAL from a judgment in favor of the plaintiff, entered in the office of the clerk of the county of Washington on April 26, 1888, upon the decision of the court after a trial had before a Washington County Special Term.

The complaint alleged that the defendant Gordon was the owner, as trustee, of a farm, charged with a trust in favor of Ebeneze

Larmouth, to apply the rents thereof to the support of the latter during his life; that he had defaulted in making such application and had sold the farm to the defendant Davis, and suffered him to receive and enjoy the rents and profits thereof. Judgment was asked against both defendants for the amount of the misapplied rents and profits, and for other relief. The answer denied the existence of the trust, and alleged that proper provision had been made for Larmouth's support, which he refused to accept.

On the 16th day of October, 1874, Mrs. Ellis McDouall conveyed her farm of forty-five acres to the defendant Gordon, by warranty deed, " in consideration of one dollar and other valuable considerations to her duly paid." Mrs. McDouall, at that time, was old and feeble, and resided upon this farm with her adult son, Ebenezer Larmouth, who was feeble in intellect and dependent upon her for support. Gordon, the grantee, was her pastor. She and her son continued to reside upon the farm after the conveyance, and until her death, which occurred March 3, 1876. On the nineteenth day of April following Mrs. McDouall's death, the defendant Gordon executed, under seal, and acknowledged and caused to be recorded in the county clerk's office, the following instrument:

" Know all men by these presents: That, because of certain real estate duly conveyed to me by Ellis McDouall, late of the town of Jackson, Washington county, New York, I, Henry Gordon, of Coila, Washington county, New York, do, of my own free will and accord, hereby consider myself, heirs, executors, or administrators, holden and firmly bound to appropriate, or cause to be appropriated, for the benefit of Ebenezer Larmouth during his life, all the rents, after deducting necessary expenses, of said real estate; or, if said real estate should be sold, the proper maintenance in board and clothing should be first lien upon said real estate during the life of said Ebenezer Larmouth; the subscriber to this bond distinctly asserts that its obligations on him are limited to the rents of said real estate, or to the interest on the purchase-money, should said real estate be sold.

" Signed, with my hand and seal, this 19th day of April, 1876.

"HENRY GORDON." [L. s.]

This farm was the only real estate conveyed to Gordon by Mrs. McDouall, and the only real estate she had had in her lifetime.

On the 22d day of January, 1877, the defendant Gordon conveyed the said real estate to the defendant Davis by a deed expressed to be in consideration of $500 and the covenants and conditions therein contained. The deed was executed by Gordon and Davis, and contained the following covenants: "This conveyance is made subject to the following conditions, viz.: That the said party of the second part shall provide and furnish Ebenezer Larmouth, of the town of Jackson aforesaid, during the natural life of said Larmouth, suitable clothing, food, and necessary lodging, medical attendance and medicine, which said clothing, food, lodging, medical attendance and medicine the said party of the second part, for himself, his heirs, executors and administrators, hereby covenants and agrees, to and with the said party of the first part, to furnish to the said Larmouth as aforesaid. And it is hereby mutually covenanted and agreed by and between the parties to these presents, for themselves, their heirs, executors and administrators, that the support and maintenance of the said Larmouth, as aforesaid, shall constitute and remain an indefeasible lien upon the premises hereby conveyed during the natural life of the said Larmouth."

Davis and his wife, at the same time, executed and delivered to Gordon a mortgage to secure the payment to him of $400, and annual interest thereon, "the interest to be used for such purposes as said Gordon and James Maxwell may mutually agree upon;" the mortgage further reciting as follows: "This grant is also intended as security for the support and maintenance, by the said Robert Davis, his heirs, executors and administrators, of Ebenezer Larmouth, during the natural life of said Larmouth, according to the condition of a bond this day executed and delivered by the said Robert Davis to the party of the second part." The bond provided that Davis "shall provide and furnish Ebenezer Larmouth, during his natural life, suitable clothing, food, lodging and necessary medical attendance and medicine, according to a condition and covenant contained in a deed of conveyance made and executed by Henry Gordon and wife and the said Davis."

Davis took possession of the farm and leased the dwelling-house and a part of the land to Plunkitt, upon the agreement that Plunkitt should support Larmouth on the premises. The agreement between Gordon and Davis was that Davis should support Larmouth on the

premises. Davis and Plunkitt offered Larmouth support upon the premises; but Larmouth, being of unsound mind, conceived that he was the owner of the premises, and refused to live upon them under permission of Davis or Plunkitt, and wandered away and was kept alive by the kindness of friends and kindred. Davis paid Gordon the interest as it fell due upon the $400 mortgage, but nothing was applied from the interest or from the income of the farm towards Larmouth's support. Gordon collected nothing beyond the interest from Davis. The plaintiff was appointed committee of the person and estate of Larmouth in March, 1877, and after demanding from Gordon that he account and pay to him the income and profits of the farm from Mrs. McDouall's death, upon leave of the court, brought this action.

*A. D. Wait*, for the appellants.

*M. Hale*, for the respondent.

LANDON, J.:

The Revised Statutes provide that no trust concerning lands shall be declared unless by operation of law or by a deed or conveyance in writing, subscribed by the party declaring the same. (2 R. S., 135, § 6.) But chapter 322, Laws 1860, provides that the above provision of the Revised Statutes shall not be construed " to prevent any declaration of trust from being proved by any writing subscribed by the party declaring the same." "Any writing subscribed by the party declaring the same " are words broad enough to embrace the writing subscribed by the defendant Gordon, and placed upon record after Mrs. McDouall's death, and, also, the deed given by him to Davis in 1877. The statutes makes no requirement as to the time when the writing shall be made or what becomes of it after it is made; it excludes parol evidence but admits written evidence, provided the writing is subscribed by the party declaring the trust. It is of no consequence, therefore, that the writing subscribed by Gordon was not contemporaneous with the deed to him, or was never delivered by him to any one except the county clerk; the only material facts are, that the writing exists, properly subscribed, and that it declares a trust. These facts being undisputed, the paper is evidence that the trust was duly declared and also of its

terms. (*Cook* v. *Barr*, 44 N. Y., 156; *Van Cott* v. *Prentice*, 104 id., 45; *Wright* v. *Douglass*, 7 id., 564.)

The defendant Gordon, by the sealed instrument subscribed by him April 19, 1876, declared to "all men by these presents, that because of certain real estate duly conveyed to one Ellis McDouall, I, * * * consider myself * * * bound to appropriate, or cause to be appropriated, for the comfortable support of Ebenezer Larmouth, during his life, all the rents, after deducting necessary expenses, of said real estate."

That this instrument was executed and placed on record by Gordon in testimony of his agreement with Mrs. McDouall, and to declare the object and conditions of her deed to him, was an inference of fact sufficiently supported by the deed and declaration themselves, construed in the light of the circumstances and of the relations of the parties to each other, and was greatly strengthened by the declarations of Gordon himself, made immediately upon the death of Mrs. McDouall.

This instrument is a declaration of trust. Gordon thereby, in effect, declares himself to be the trustee of an express trust to receive the rents of the farm and apply them, less the necessary expenses, to the use of Ebenezer Larmouth during the life of the latter. (1 R. S., 728, § 55.) The title to the farm is in Gordon; Larmouth takes no estate or interest in the land, but may enforce the performance of the trust in equity. (p. 729, § 60.) The declaration of trust is separate from the conveyance to Gordon, and, therefore, section 65 of the statute, declaring that where the trust is expressed in the instrument creating the estate, every conveyance or act of the trustee in contravention of the trust is void, does not strictly apply to Gordon's conveyance to Davis. The declaration of trust itself permits a sale of the premises. It provides "that if such real estate should be sold, the proper maintenance in board and clothing should be a first lien upon said real estate during the life of said Larmouth; the subscriber to this bond distinctly asserts that its obligations on him are limited to the rents of said real estate or to the interest on the purchase-money." Gordon could, therefore, sell the premises. The declaration of trust, however, was recorded. The recording act embraces every instrument in writing by which the title to real estate may be affected in law or equity. (1 R. S., 762, § 38.) This

declaration did affect Gordon's title in equity, and, therefore, its record was notice to Davis, his subsequent grantee. (*Bacon* v. *Van Schoonhoven*, 19 Hun, 158; S. C., 87 N. Y., 446; *Grandin* v. *Hernandez*, 29 Hun, 399.) The deed to Davis shows that he had actual notice of a trust, and he therefore was put upon inquiry as to its extent. He took the premises impressed with the trust and subject to it. The conveyance to him appears to have been made in order practically to secure its execution. But Gordon having accepted the trust could not divest himself of it without leave of the court. (*Brennan* v. *Wilson*, 71 N. Y., 502.) Davis held the land subject to the trust in favor of Larmouth, that its net income should be applied by the trustee to Larmouth's support. Davis gave a mortgage of $400 to Gordon upon the premises, to be paid in 1892, with annual interest in the meantime. Davis paid the interest, twenty-four dollars per year, to Gordon. Davis is not responsible for Gordon's failure to apply this interest to Larmouth's support. If Davis had paid the proper rent or balance over the interest to Gordon, he would not be liable for Gordon's non-application of it to Larmouth's support, since Gordon is trustee and not Davis.

But since, with full notice, he has had the fund from which the maintenance was to be raised, and he has not raised it, except the twenty-four dollars per year, he is in default, primarily, it may be admitted, to Gordon the trustee, but equitably to Larmouth, the *cestui que trust;* and since Davis and Gordon made the contract whereby Larmouth was relegated to Davis for support, and Davis made a contract whereby Larmouth was transferred to Plunkitt, and the result of the several contracts was that Larmouth got nothing, Davis may be charged as a co-wrong-doer with Gordon to the extent that Davis still retains what Larmouth should have received. (Story's Eq., § 1131 a.) Thus Gordon is liable to the extent of the entire default, and Davis, as his coadjutor, from the date of his purchase, less twenty-four dollars per year.

The trial court has measured that liability at the rate of $175 per year from March 6, 1876. Davis' liability is for one year less. Complaint is made that it is an exorbitant allowance. It seems to be within the evidence, and we do not feel authorized to reduce it.

The statute of limitations is interposed. The statute has not begun to run with respect to the trust itself, for that has not been repu-

diated, and the trust remains in full force. (*Lammer* v. *Stoddard*, 103 N. Y., 672.) The sixtieth section of the statute of uses and trusts, above cited, authorizes Larmouth to enforce the performance of the trust in equity. He has, at least, ten years after any default to enforce his equitable remedy. (Code of Civil Pro., § 388.) Ten years from his mother's death had not elapsed when this action was commenced.

The defendants complain that parol evidence was improperly received. It was competent to give sufficient evidence of the surrounding circumstances to enable the court to ascertain who the parties were, what were their relations to each other, and what farm it was they were dealing with; in other words, sufficient to identify persons, parties and subject-matter. The trust itself is that which the writing declares and defines. Since the trial court properly construed the writing and adjudged its effect, it is immaterial whether the case, in this respect, was cumbered with improper evidence.

The defendant Davis claims that, by his contract with Gordon, he was only bound to furnish Larmouth with maintenance upon the farm itself, and that he was ready and offered to do this, but that Larmouth refused to accept it, and that if Larmouth did not receive support, it was his own fault. The answer to this is that, since the trust was impressed upon the farm, it was incompetent for Gordon to make any contract or agreement with Davis whereby the terms of the trust should be in anywise diminished, or its performance made to depend upon a new condition. And this the law presumes that Davis knew, and, therefore, knew the risk he took when he stipulated for the new condition. The first and unconditional income from the farm was due to Larmouth, and when Davis took it, he undertook that he would not defeat Larmouth's right.

The judgment is, in the main, right, but needs some modification. No vendor's lien exists in favor of Larmouth. He was not the vendor, but, if we may so speak, he was the vendee of an equity in the premises. The statute, already cited, defines his estate and prescribes his remedy. (Sec. 60, *supra*.) The title to the farm is in Davis, subject to the execution of the trust. His title is subject to sale upon execution. Gordon is still trustee, and his removal is not asked. For aught we know he and Davis, instructed by this judgment, will be zealous in the full performance of the trust. If it shall be neces-

sary to remove the trustee and appoint another, and commit the custody of the farm to his possession during the life of Larmouth, the facts justifying such action do not now fully appear.

The judgment against Gordon is affirmed as to the amount of his liability. While we see no escape from this conclusion, we are impressed with the many circumstances of the case which show that Gordon sought to make provision for Larmouth, and that his failure to do so has been of little advantage to himself. We, therefore, in our discretion, direct that the costs of the respondents be paid from the proceeds of the judgment. The judgment against Davis must be reduced by deducting $175 for the year ending March 6, 1877, and interest to the date of the entry thereof, and also by twenty-four dollars per year from March 6, 1878, with interest to the entry of the judgment So reduced the judgment is against him jointly with Gordon, and is affirmed without costs in this court. The provision for the sale of the premises otherwise than upon execution is stricken from the judgment. The order to be settled in accordance with this opinion.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment modified as expressed in opinion, and as so modified, affirmed without costs to any party.